Nichols, C. J.
John Bauer died testate in October, 1883.
His widow, Anna Catherine Bauer, was appointed executrix of his will.
On February 28, 1885, she filed a partial account.
This account, showing a balance due her of $3,-688, was confirmed.
December 17, 1890, she resigned.
The resignation was in writing and in the same document she recommended the appointment of R. W. Johnston as her successor.
The resignation and recommendation were duly filed by the probate judge of Crawford county.
There is no record to be found of the formal acceptance of this resignation.
December 30, 1890, such probate court issued its letters in due form to R. W. Johnston as administrator d. b. n. with will annexed, who duly qualified.
The new officer proceeded with the administration, and in due course sold eighty acres of land and made application of proceeds to the payment of debts,
On April 11, 1914, R. W. Johnston filed an account, designated “Final Account.”
This account was confirmed, there being, however, no formal discharge of the administrator by the court.
The records of the probate court do not show nor is it claimed that Johnston ever filed any written resignation of this trust, nor do they show that he was removed therefrom.
*61 The widow was devised a life estate in all the real estate of the testator. She died intestate in July 1916, never having divested herself of this estate.
Charles F. Schaber was appointed administrator of her estate and took immediate steps to enforce payment of the balance found due her as executrix of her husband’s estate.
On November 17, 1916, W. J. Schwenck was appointed as administrator d. b. n. with will annexed of John Bauer, such appointment having been made without the written waiver or consent of any of the heirs at law or devisees of John Bauer, although quite a number of them were residents of Crawford county; nor is there any claim that notice of the application for appointment was served on these heirs and devisees.
There remain unsold, of the real estate of John Bauer, about 243 acres of land in Crawford county, being an asset under the control of the administrator, if the debts now asserted are found to be genuine.
The debts claimed to be still due from the John Bauer estate are in dispute and are in fact in litigation.
It was further agreed, as shown by the record, that R. W. Johnston’ administrator, would testify, that at the time he filed his so-called final account, he then was, and has been at all times since, ready to proceed with any duties that might devolve on him as such administrator.
No testimony was offered to dispute this state of facts.
*62 We learn from the record that Johnston, administrator, on December 7, 1916, filed an application, duly verified, seeking the removal of Schwenck, administrator.
Johnston alleges in this application that he had neither resigned his trust nor been removed therefrom, and that he is still the duly appointed administrator and duly authorized by law to proceed with the duties of the office; that claims to a large amount have been recently asserted against the estate, which it is charged are illegal; and that he is now ready to defend the estate against such claims and to protect and conserve the estate.
It is further alleged that , in certain proceedings in partition pending in common pleas court of Crawford county Schwenck, administrator, has filed cross-petition, wherein he asserts the validity of the alleged debts and asks for a sale of the real estate in order to pay them.
.Such application was heard in the probate' court and the motion to remove Schwenck was overruled, the court holding that from the facts hereinbefore set forth Johnston’s conduct was such as to constitute in law and fact an abandonment of the trust.
The cause was thereupon appealed to the court of common pleas, where it was heard on stipulation of the parties as to the facts, the finding on the issues thus joined being in favor of Schwenck and against Johnston, administrator.
In due course the cause reached the court of appeals, the entry in which court shows that the judg *63 ment of the court of common pleas was affirmed on the ground that substantial justice had been done.
We have no official information as to the ground of affirmation, but we do learn, both from briefs and oral statements of counsel for both parties, that it was the holding of the court of appeals that the appointment of Johnston in 1890 was invalid for the reason that there was no record evidence in the probate court of the acceptance of the resignation of Anna Catherine Bauer, the original fiduciary.
On application of Johnston, administrator, the case was admitted to this court for review.
There are three legal questions involved in this case:
1. Do the undisputed facts of the case establish in law an abandonment of the trust by Johnston, administrator?
2. Is it a prerequisite, before the probate court has jurisdiction to appoint a successor in office, to an executrix who has tendered her resignation, that such court shall formally accept the resignation?
3. Is a proceeding to remove an administrator, or to revoke letters of administration, appealable under the code ?
The probate court based its decision on the finding of the court that the conduct of Johnston with respect to the office amounted to an abandonment of the trust.
We are wholly unable to find anything in the facts, hereinbefore fully set forth, to justify any such conclusion. It is true that Johnston filed what was termed his final account, a great many years *64 ago, and in the meantime made no move in the direction of exercising the functions of the office.
This conduct is to be considered in the light of the facts and circumstances surrounding the estate. If there was any creditor whos.e claim remained unsatisfied, it was the widow, to whom therq was a balance due of $3,688, as shown by her final account. She occupied the dual relation of creditor and life tenant.
In order to satisfy her claim, it would be necessary to sell the property, of which, all through these intervening years, she had the beneficial enjoyment.
There is a dispute as to the validity of the debt, it being claimed to have been extinguished by agreement of the parties. But, conceding its validity, the failure of the administrator to proceed, it is to be fairly presumed, was with her full acquiescence, if not at her absolute direction.
This situation presents the very best of reasons why the administration should have been suspended until the death of the widow. She alone could complain of delay, and, as we have demonstrated, she was being benefited rather than harmed.
It is the universal holding that the authority of an executor or administrator to represent the estate continues until the estate is fully settled, unless he is removed, dies or resigns, and that the filing of what purports to be a final account does not extinguish the trust. Indeed, in the case of Weyer et al. v. Watt, Exr., 48 Ohio St., 545, it was held that an order by the court, directing that the administrator be discharged, made at the time of the *65 filing of a final account, does not terminate his authority if assets of the estate remain unadministered.
In the case at bar, the real estate, so far as it may have been necessary to pay any valid indebtedness, was all the while, technically at least, an asset in the hands of the administrator.
The second question in the case is that suggested by the court of appeals in its affirmance of the judgment of the common pleas.
Is it necessary, upon the filing by the executor, of an estate of a resignation of the trust, with a recommendation that a particular person be appointed as successor, for the court, before acquiring jurisdiction to appoint such successor, to accept the resignation by formal entry of such fact upon its journal?
Counsel for Schwenck, administrator, contend that such necessity exists under the law, and cite the case of Reiter v. State, ex rel., 51 Ohio St., 74, and Section 10627, General Code, in support of their contention.
We are of the contrary opinion, and hold that the filing of the resignation of the executor, followed by the issuing of letters of administration d. b. n. with will annexed to another, is to be considered an acceptance by the court of such resignation.
A consideration of the case of Reiter v. State, supra, instead of establishing the necessity of formal acceptance, when carefully analyzed, really de *66 cides such acceptance not indispensable to the authority to fill a vacancy.
Especially is this true when the Reiter case is considered in connection with Section 10627, General Code.
It is held in the first proposition of the syllabus in the Reiter case: “By the rules of the common law, a resignation of an office does not take effect, so as to create a vacancy, until such resignation is accepted by the proper authority; but the common law in this regard is not in force in this state, to its full extent, and here a resignation without acceptance creates a vacancy, to the extent at least, of giving jurisdiction to appoint or elect a successor, unless otherwise provided by statute.”
Accepting this syllabus as the accepted law of the state, let us examine the statute on the subject of the resignation of an administrator, and the filling of the vacant trust by the probate court, and determine whether it is “otherwise provided by statute.”
Let it be understood that this exception, if it does exist, and has been provided for by statute, must, like all exceptions to every general rule, be made clearly to appear.
Section 10627 reads: “The court issuing letters testamentary or appointing an administrator, if it deems fit, upon good cause shown, may receive the resignation of such executor or administrator, and appoint an administrator in his place.”
In the first place, let it be noted that the language employed is not that the court may or must accept *67 the resignation, but simply that it may “receive” it, “if it deems fit.”
That the court, in the case under consideration, did receive the resignation, so far at least as filing with his official signature the document purporting to be such, is an admitted fact, and the original paper, with proper file marks, is to be found in the archives of the court.
To take a thing is to “receive” it. Ordinarily, if some further action is to be had by the recipient, the use of the expression “accept” would be expected, and an investigation of the statutes respectively relating to the resignation of guardians, trustees and commissioner of insolvents, discloses, the fact that the term “may accept the resignation” is employed. In this connection we refer to Sections 11035, 11147 and 10938, General Code.
Of course, there is a sense in which the terms, “receive” and “accept” are synonymous., and when it is seen by the terms of the statute under consideration that the judge of the probate court is vested with some discretion, in that it is said that he may receive it, “if he deems fit” and upon good cause being shown, it may with some force of reason be urged that some further action is implied.
What is meant by “if he deems fit” or upon good cause being shown, in such circumstances as these, is hot easily understood.
It occurs to us that if one who has been acting as administrator or executor concludes that he does not desire to continue longer in that capacity, whether the cause inducing his decision be good or bad, or whether it be without reason at all, the court *68 could not force him to remain in office against his will.
It is supposable that if such officer had been unfaithful to his trust, the court might prefer to remove him rather than permit him to resign, although his own liability for breach of trust, or that of his bondsmen, could not be affected by the manner in which his connection with the trust was terminated.
We are not inclined, however, to decide this question on a mere technicality, or mere nicety as to shade of meaning of terms, although, if we did do so, it would be only opposing technicality to technicality; for surely the questioning of the validity of the appointment of an administrator twenty years after his induction into office and after he had faithfully discharged important duties in connection with the trust would be pushing formality and technicality beyond all just limits, particularly when the sole basis of the attack was that the court making the appointment had failed to enter on its journal an acceptance of the resignation of the predecessor in office.
. It would be dismal surrender to mere form, and a patent sacrifice of the substance of things, to so hold, especially when we consider that the administrator, then appointed without objection of either creditor, heir or devisee, performed the functions of his office, selling real estate, paying debts and rendering proper account of his administration.
We have facts of a most substantial nature that impel us to hold the appointment of Johnston to be valid; for the court, receiving the resignation of *69 the executrix, acted on it and treated it as a completed transaction in that immediately after receiving the same it proceeded to fill the vacancy by the ’ appointment of Johnston, to whom it issued letters of authority under the seal of the court.
We are of the opinion that if an acceptance of the resignation of the executrix is a condition precedent to the power of making the new appointment, then the. action of the court in receiving the resignation and thereafter appointing a successor is in law tantamount to an acceptance thereof.
With reference to the third question we hold that a proceeding of the character here under consideration is appealable from the probate court, feeling that the cause is well within the spirit of Section 11206, General Code.
The judgment of the court of appeals is accordingly reversed and the cause is remanded to the probate court of Crawford county with directions to proceed in accordance with the finding of this court.

Judgment reversed and cause remanded.

Wanamaker, Newman, Jones, Matthias, Johnson and Donahue, JJ., concur.